IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTHONY A.,[1]
    Plaintiff,

        v.                                        Civil No. 3:20-cv-417 (EWH)

KILOLO KIJAKAZI,[2]
Commissioner of Social Security,
    Defendant.

## <u>MEMORANDUM OPINION</u>

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of Anthony A. ("Plaintiff") for disability insurance benefits under the Social Security Act. Plaintiff, fifty-three years old at the time of his benefits application, previously served in the Marine Corps and worked as a maintenance worker for the National Park Service following his military service. (R. at 33–35, 44, 120–26, 161.) Plaintiff suffers from anxiety, depression, and post-traumatic stress disorder ("PTSD"), which all significantly limit Plaintiff's ability to perform basic work activities. (R. at 13.) On August 17, 2018, the Veteran's Administration ("VA") found that Plaintiff had a 100% disability for PTSD. (R. at 292–301.)

On January 28, 2020, an Administrative Law Judge ("ALJ") with the Social Security Administration denied Plaintiff's application for benefits. (R. at 11–19.) Plaintiff now seeks

---

[1]    The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2]    On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi should be substituted for former Commissioner Andrew M. Saul as the defendant in this matter.

judicial review of the ALJ's decision, asserting that the ALJ erred in failing to consider his 100% disability determination from the VA and in assessing his residual functional capacity determination, such that this Court should remand for a calculation of benefits. (Pl.'s Mem. in Supp. of Mot. for Summ. J. 6–15 ("Pl.'s Mem."), ECF No. 21.)

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[3] For the reasons that follow, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 20), GRANTS Defendant's Motion for Summary Judgment (ECF No. 22), and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On November 19, 2018, Plaintiff filed an application for disability insurance benefits, with an alleged disability onset date of August 30, 2018. (R. at 120–26.) The Commissioner denied Plaintiff's claim initially, and again upon reconsideration. (R. at 62, 78.) An ALJ held a hearing on January 8, 2020, where Plaintiff and a vocational expert testified. (R. at 26–48.)

At the hearing, the ALJ asked Plaintiff to explain his previous jobs, daily activities, and "what is it that prevents [him] from working and why [he] feel[s] [he] can't work." (R. at 34–35, 37.) Plaintiff testified that he had previously worked as a maintenance worker for the National Park Service, which involved cutting grass, cleaning restrooms, and vacuuming carpets. (R. at 35.) He stated he left his maintenance worker job because he was "calling in sick so much at work,"

---

[3]      The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

and that he does not get as anxious or depressed if he stays at home. (R. at 37.) He explained his decision to leave his job, as well as his current inability to work, as necessary because his illness causes him to lose a lot of sleep, his medications make him fatigued, and he gets depressed and anxious easily. (R. at 37–38.) Plaintiff also testified that he has difficulties with his memory and decision making, maintaining attention and concentration, and understanding instructions. (R. at 38.) However, he also stated that "[a]s long as it's not too complex, I do understand written or oral instructions." (R. at 38.) Plaintiff was also asked to describe his problems with interacting with people:

> [Plaintiff:] The problems interacting with people – if it's like a dozen of people, I feel overwhelmed. . . . With one individual, I can have dialogue, but I have trust issues, you know. I don't know why, but I have trust issues. . .

> [Plaintiff's Counsel:]  You said a moment ago that you have good days and bad days. Do you have good days and bad days with interacting with a single individual or people?

> [Plaintiff:]  No. My – no. It's consistent with when I deal with people . . . . I meant by good days or bad days, on a good day I don't have high anxiety or low depression. . . .

> [Plaintiff's Counsel:]  On a good day, can you interact with a group of 10 or 12 people?

> [Plaintiff:]  No.
>                              . . . .

> [Plaintiff's Counsel:]  On a good day, can you go out from the house and interact with a single individual, somebody that you normally wouldn't interact with?

> [Plaintiff:]  No. I stay isolated to myself. . . . I can make a gas purchase. I can – I mean it's a quick interaction, but to have long dialogue with somebody, I don't do that.

(R. 38–40.) Finally, Plaintiff testified that he drives "[p]robably once a day." (R. at 33.)

The ALJ then posited, to the vocational expert, a hypothetical question regarding work that could be performed by an individual with no exertional limitations but with limitations of

maintaining concentration, persistence, and pace to perform simple work-related tasks in two-hour increments; interacting with the public occasionally; and tolerating occasional changes in a routine work setting. (R. at 44–45.) The vocational expert testified that such individual could perform Plaintiff's previous maintenance worker position, as well as jobs existing in the national economy, such as laundry worker, marker, and document preparer. (R. at 45–46.) The vocational expert also noted that these jobs would have a maximum tolerance of being absent one day per month. (R. at 46.)

Following the hearing, the ALJ issued an initial decision on January 28, 2020, finding Plaintiff not disabled. (R. at 11–19.) The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision on April 17, 2020 (R. at 1–4), which rendered the ALJ's decision as the final decision of the Commissioner. Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. THE ALJ'S DECISION

The ALJ's written opinion concluded that Plaintiff did not qualify as disabled and denied him benefits. (R. at 11–19.) The ALJ followed the five-step evaluation process established by the Social Security Act to determine whether a disability exists. (R. at 13–19); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (describing the five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's medical impairments meet or equal an

4

impairment in the Listings.[4] § 404.1520(a)(4)(iii); *see* Pt. 404, Subpt. P, App. 1. Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1520(e), 404.1545(a)(1). At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 30, 2018, which is the alleged onset date of his impairments. (R. at 13.)

At step two, the ALJ concluded that Plaintiff suffers from anxiety, depression, and PTSD, which all significantly limit Plaintiff's ability to perform basic work activities. (R. at 13.)

At step three, the ALJ determined that none of Plaintiff's impairments, individually or in combination, met or equaled a disability listing in the Listings. (R. at 14–15.) Specifically, the ALJ held that Plaintiff's impairments did not meet or equal Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorder), and 12.16 (trauma and stress-related disorders). (R. at 14–15.)

After step three, the ALJ determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but that he had the following nonexertional limitations:

> [Plaintiff] is able to maintain concentration, persistence, and pace to perform simple work-related tasks in two hour[] increments in order to complete an eight-hour day,

---

[4]     The Listings are a regulatory appendix of "the major body systems impairments that [the Commissioner] consider[s] to be severe enough to prevent an individual from doing any gainful activity." § 404.1525(a).

is able to interact with the public occasionally, and is able to tolerate occasional changes in a routine work setting.

(R. at 15.)

In rendering this residual functional capacity determination, the ALJ relied on Plaintiff's testimony, his medical records, and the medical opinion evidence. (R. at 15–17.) The ALJ noted Plaintiff's testimony that he left his maintenance worker position because he took excessive sick leave, and that he cannot work because of his difficulty sleeping, fatigue, anger, depression, and anxiety when away from home. (R. at 16.) The ALJ observed, however, that Plaintiff testified that he could "perform simple tasks and interact with small groups, drive[] once a week, and is able to functional independently," and that Plaintiff was able to manage the household, his teenage son, and the death of the family dog when Plaintiff's spouse was on extended leave out of the country. (R. at 16.)

The ALJ further noted Plaintiff's ongoing treatment for depression, anxiety, and PTSD, and that he suffers from reduced concentration, insight, and judgment; anxiety; and occasional sleep disturbance. (R. at 16.) However, the ALJ also observed that Plaintiff's "functioning" improved after leaving the workforce in August 2018 and receiving more consistent treatment, as demonstrated by his ability to manage the household in his spouse's absence, his ability to travel to Indonesia for a trip, and his cooperative, normal mood, and normal thought processes during treatment visits. (R. at 16.)

The ALJ also found the medical opinions of Jo McClain, Psy.D ("Dr. McClain") and Richard J. Milan, Jr., Ph.D ("Dr. Milan") persuasive. (R. at 16–17.) According to the ALJ, those doctors found that Plaintiff had moderate limitations in his ability to maintain attention and concentration, to work in coordination with others, to complete a normal workday and week

without interruptions, to perform at a consistent pace without an unreasonable number of rests, to interact with the public, and to respond to changes in a work setting. (R. at 17.)

In light of this evidence, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record. (R. at 16.) The ALJ thus found that the record supported the limitations in Plaintiff's residual functional capacity. (R. at 17.)

At step four, the ALJ concluded that Plaintiff is able to perform his past relevant work as a maintenance worker. (R. at 17.) The ALJ noted that the vocational expert testified that a hypothetical individual with Plaintiff's limitations would be able to perform his past maintenance work position. (R. at 18.)

At step five, the ALJ also held, in the alternative, that there were jobs that existed in significant numbers in the national economy for Plaintiff to perform. (R. at 18.) The ALJ noted that Plaintiff's "ability to perform work at all exertional levels has been compromised by nonexertional limitations," but that, according to the vocational expert's testimony, Plaintiff would be able to perform the jobs of laundry worker, marker, and document preparer notwithstanding his nonexertional limitations. (R. at 18–19.) The ALJ therefore concluded that the Plaintiff was not disabled. (R. at 19.)

### III. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at

207 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir.2005) (per curiam) (internal quotation marks omitted)). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 266 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

## IV. ANALYSIS

Plaintiff advances two principal arguments. First, Plaintiff argues that the ALJ erred in failing to consider the VA's 100% percent disability finding. (Pl. Mem. at 6–8.) Second, Plaintiff argues that the ALJ erred in numerous ways in determining Plaintiff's residual functional capacity, including by failing to include a limitation for absenteeism and that substantial evidence does not support some of the ALJ's statements. (Pl. Mem. at 9–15.) Given these errors, Plaintiff requests the Court to remand the case for a calculation of benefits rather than for a new hearing. (Pl. Mem. at 15.)

For the reasons stated below, this Court finds that the ALJ did not err in denying Plaintiff's application for benefits. Specifically, the ALJ did not err in refusing to consider the 100% disability decision by the VA, in considering Plaintiff's absenteeism at work, and in making certain statements regarding Plaintiff's abilities when formulating Plaintiff's residual functional capacity. Accordingly, a remand for a calculation of benefits is not warranted.

**A. The ALJ Did Not Err in Refusing to Consider the VA's 100% Disability Finding.**

Plaintiff argues that the ALJ erred in failing to consider the VA's decision to assess Plaintiff with a 100% percent disability finding for PTSD. (Pl.'s Mem. at 6.) Plaintiff asserts that the VA decision is a "medical opinion" or a "prior administrative medical finding" under the regulations, and that the regulations—specifically, 20 C.F.R. § 404.1520c—and the United States Court of Appeals for the Fourth Circuit's opinion, *Bird v. Commissioner*, require the ALJ to "undertake a comprehensive evaluation" of the VA's decision. (Pl.'s Mem. at 7 (*quoting Bird v.  Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012)).)

Defendant argues that the ALJ did not err in failing to consider the VA's decision because § 404.1504 instructs that the ALJ "not provide any analysis" of such decision but only consider the decision's "underlying evidence." (Def.'s Mem. at 12.) Defendant asserts that the ALJ considered the "underlying evidence" of the VA decision because the ALJ heard Plaintiff's opening statement at the hearing about the VA decision, as well as Plaintiff's testimony about his VA decision, VA therapy, and VA appointments. (Def.'s Mem. at 12.) Defendant also argues that Plaintiff cannot rely on *Bird* because that case applied regulations that were effective before March 27, 2017. (Def.'s Mem. at 10.) Defendant asserts that Plaintiff filed his claim in November 2018, and therefore the new regulations—as expressed in § 404.1504—apply to his claim. (Def.'s Mem. at 10–12.)

For claims filed on or after March 27, 2017,[5] § 404.1504 governs how the Commissioner considers disability and other administrative decisions—including decisions by the VA—when determining a claimant's entitlement to Social Security disability benefits.

> Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is

---

[5]    Plaintiff filed his application on November 19, 2018. (R. at 120–26.)

based on its rules, *it is not binding* on us and is not our decision about whether you are disabled or blind under our rules. Therefore, . . . *we will not provide any analysis in our determination or decision about a decision made by any other governmental agency* or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. *However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive* as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

§ 404.1504 (emphases added).

The ALJ did not err in refusing to consider the VA's 100% disability determination. Under § 404.1504, the VA's decision was "not binding," and the ALJ was prohibited from providing "any analysis" about the decision. Although § 404.1504 requires the ALJ to consider the "supporting evidence" underlying the VA's decision, Plaintiff must, to properly raise the issue with the Court, identify the VA records the ALJ failed to consider. *See Yonnes S. v. Saul*, No. 1:20CV0819, 2021 WL 2767298, at *9 (E.D. Va. Mar. 31, 2021) (refusing to address an argument that the ALJ failed to consider the supporting evidence of a VA decision because Plaintiff did not identify VA records the ALJ failed to consider). Here, in his brief to this Court, Plaintiff only identified the VA's decision and did not otherwise identify any supporting evidence underlying the VA's decision that the ALJ failed to consider. The Court cannot discern which specific VA documents in the record the ALJ failed to consider.

Even assuming Plaintiff properly raised this argument, the ALJ appears to have considered the "supporting evidence" of the VA's disability decision. The VA decision is in the record, and it primarily relied on Plaintiff's testimony from a VA hearing and VA medical records. (R. at 403–04.) The ALJ considered both Plaintiff's testimony and the VA medical records in her decision. Plaintiff had the same opportunity to testify before the ALJ here (R. at 31–43), which the ALJ considered (R. at 16). The ALJ also cited to VA medical records in her analysis. (R. at 13–14, 16 (citing 291–352, 406–657).) For instance, the ALJ cited to Plaintiff's VA treatment records to note

that his PTSD, anxiety, and depression cause him "reduced concentration and attention, reduced insight and judgment, anxiety, and occasional sleep disturbance," and that Plaintiff had "normal mood" during treatment visits. (*See* R. at 16 (citing R. at 406–656).) The ALJ therefore appropriately considered the "supporting evidence underlying" the VA's 100% disability determination. *See* § 404.1504.

Plaintiff nonetheless argues that the ALJ should have considered the 100% disability determination itself, relying on two different legal sources: § 404.1520c and the Fourth Circuit's decision in *Bird v. Commissioner*, 699 F.3d 337 (4th Cir. 2012). Neither of these sources supports Plaintiff's arguments.

Under § 404.1520c(a), the Commissioner "will consider . . . medical opinions or prior administrative medical findings" from a medical source. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ." § 404.1513(a)(2). A "prior administrative medical finding[]" is "a finding, *other than the ultimate determination about whether you are disabled*, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review in your current claim." § 404.1513(a)(5) (emphasis added). The VA's disability decision does not fit either of these definitions. The VA is not a "medical source" that renders medical opinions, nor is it a "Federal and State agency medical and psychological consultant." The definition of a "prior administrative medical finding[]" also specifically excludes "the ultimate determination about whether you are disabled," which, in the

present case, excludes the 100% disability determination that Plaintiff argues the ALJ should have considered.[6]

Plaintiff also erroneously relies on *Bird*. In that case, the Fourth Circuit held that an ALJ must give "substantial weight" to a disability determination rendered by the VA, unless the administrative record "clearly demonstrates" a deviation from that VA decision. 699 F.3d at 343. *Bird*, however, relied on Social Security Ruling No. 06-03p, which stated that another administrative agency's disability determination "cannot be ignored and must be considered" by an ALJ. *Bird*, 690 F.3d at 343 (quoting SSR No. 06-03p, 2006 SSR LEXIS 5, at *17). That Social Security ruling was rescinded on March 27, 2017. Rescission of Social Security Rulings, 82 Fed. Reg. 15263 ("[A]djudicators will not provide any articulation about their consideration of decisions from other governmental agencies . . . because this evidence is inherently neither valuable nor persuasive to us."). The *Bird* analysis is therefore not applicable to claims filed after March 27, 2017, which includes Plaintiff's application filed on November 19, 2018.

Finally, this Court notes that Plaintiff's precise arguments on this issue were explicitly rejected in *Yonnes S. v. Saul*, No. 1:20CV0819, 2021 WL 2767298 (E.D. Va. Mar. 31, 2021). There, the claimant argued that the ALJ erred in refusing to consider Plaintiff's VA disability determination, relying on 20 C.F.R. § 404.1520c and *Bird*. *Yonnes S.,* 2021 WL 2767298, at *8. This Court rejected Plaintiff's arguments, using the same reasoning as described above. *Id.* at *8– *9.

---

[6]     Further, as noted by the Government, § 404.1504 explicitly addresses "disability . . . benefits decisions" made by "[o]ther governmental agencies and nongovernmental entities – such as the Department of Veterans Affairs."

Because § 404.1504 prohibits an ALJ from considering a disability determination by another administrative agency, the ALJ did not err in failing to consider Plaintiff's 100% disability determination by the VA.

**B. The ALJ Properly Determined Plaintiff's Residual Functional Capacity.**

Plaintiff argues that the ALJ made several errors in evaluating Plaintiff's residual functional capacity, including by failing to include a limitation for absenteeism and because the reasons provided in formulating Plaintiff's residual functional capacity are not supported by substantial evidence. (Pl.'s Mem. at 8–15; Pl.'s Reply to Def.'s Mot. for Summ. J. 3–7 ("Reply Br."), ECF No. 24.) Plaintiff also generally challenges the ALJ's explanations or analysis. (Pl.'s Mem. at 8, 12–15.)

Defendant argues that the ALJ properly discounted Plaintiff's testimony regarding his future inability to work due to absenteeism because the need for sick leave was not supported by the record. (Def.'s Mem. at 12–20.) Defendant contends that substantial evidence supports the ALJ's conclusions, and that the ALJ properly explained the residual functional capacity analysis. (Def.'s Mem. at 19–20.)

After step three of the ALJ's analysis, but before making a determination whether the claimant can perform past relevant work, the ALJ must assess the claimant's residual functional capacity. § 404.1545(a)(1). Residual functional capacity "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (quoting § 416.945(a)(1)). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's physical limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. § 404.1545(b). The residual functional capacity formulation must incorporate impairments supported by objective medical

evidence in the record and those symptoms that are based on the claimant's credible, subjective complaints. § 404.1529(a).

Finally, in conducting the residual functional capacity analysis, an ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). Such narrative discussion helps this Court conduct a meaningful review of the basis for the ALJ's ruling. *Id*. The ALJ must therefore discuss "which evidence the ALJ found credible and why" and conduct a "specific application of the pertinent legal requirements to the record evidence." *Id.* (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). In other words, a sufficient residual functional capacity analysis must include: "(1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019).

### 1.  The ALJ Did Not Err in Failing to Include an Absenteeism Limitation.

Plaintiff argues that evidence of his need to take sick leave in his prior maintenance position "shows [Plaintiff] is unable to sustain work on a regular and continuing basis without disabling degrees of absenteeism." (Pl.'s Mem. at 8.) Plaintiff argues that his testimony—which attributed his absenteeism entirely to his anxiety, depression, and PTSD—taken together with work records from his prior job, were "uncontradicted evidence" that the ALJ failed to consider. (Pl.'s Mem. at 8; Reply Br. at 3.)

Defendant argues that Plaintiff's testimony regarding the need for sick leave in the future was "not supported by record" (Def.'s Mem. at 13), and that the ALJ properly weighed this evidence as subjective evidence of the limiting effects of Plaintiff's symptoms (*see* Def.'s Mem. at 13–20). Defendant asserts that the ALJ properly relied on Plaintiff's testimony, the medical

records, and the opinion evidence to conclude that Plaintiff's subjective complaints of the intensity, persistence, and limiting effects of his symptoms—including his asserted absenteeism limitation—were not entirely consistent with the record. (Def.'s Mem. at 13–20.) Finally, the Defendant argues that the ALJ's conclusion regarding Plaintiff's ability to work in the future, including the need for any absences, is supported by substantial evidence. (Def.'s Mem. at 13.)

When evaluating a claimant's subjective complaints in the context of a residual functional capacity determination, the ALJ must follow a two-step analysis. § 404.1529(a); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). The first step requires the ALJ to determine the existence of an underlying medically determinable physical or mental impairment or impairments that could reasonably produce the claimant's alleged pain or other symptoms. § 404.1529(b); *Craig*, 76 F.3d at 594. At the second step, the ALJ determines the extent to which the subjective complaint impairs the claimant's ability to work, which requires the ALJ to consider objective medical evidence and other objective evidence, as well as the claimant's allegations. *Craig*, 76 F.3d at 595. Although an ALJ cannot discredit a claimant's subjective complaints "solely because they are not substantiated by objective evidence," the ALJ need not accept such complaints if inconsistent with the available evidence or not reasonably expected to be produced by the alleged impairment. *Id*. In considering Plaintiff's subjective complaints, the ALJ must consider "all of the available evidence," § 404.1529(a), including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms . . . as well as the factors set forth in [the] regulations." SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016). As noted above, the ALJ has a duty to adequately explain this two-step analysis when formulating the residual functional capacity. *See Monroe*, 826 F.3d at 189.

This Court must give great deference to the ALJ's credibility determinations: "[W]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Carpenter v. Berryhill*, No. 3:17cv248, 2018 WL 3385191, at *12 (E.D. Va. May 31, 2018) (quoting *Eldeco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1997)). Thus, "[w]hen the ALJ appropriately considers all relevant factors, hears the claimant's testimony and observes his demeanor, the ALJ's credibility determination deserves [] deference." *Id.* (citing *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)). "Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless 'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *Eldeco, Inc.*, 132 F.3d at 1011).

Here, Plaintiff testified at the hearing regarding his subjective statements of his symptoms, including that he stopped working at his maintenance position because his lack of sleep and side-effects from medications caused him to "call[] in sick so much at work." (R. at 37.) Plaintiff also introduced evidence of his attendance records as a maintenance worker with the National Park Service, which showed that Plaintiff missed, on average, three working days a month from November 2017 to August 2018. (R. at 118.) Plaintiff attributes his absenteeism entirely to his anxiety, depression, and PTSD. (Reply Br. at 3; R. at 37–38.)

Although the ALJ found that Plaintiff's PTSD, depression, and anxiety could reasonably be expected to cause Plaintiff's symptoms, the ALJ found that Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. at 16.) Stated differently, the ALJ found that Plaintiff's statements concerning the extent of his symptoms were inconsistent with other evidence in the record.

16

In support of this credibility determination, the ALJ relied on Plaintiff's testimony, Plaintiff's ability to perform daily activities, medical evidence, and other evidence in the record. (R. at 16–17.) The ALJ acknowledged Plaintiff's testimony about his absences and activities of daily living. (R. at 16.) The ALJ acknowledged that Plaintiff has a history of depression, anxiety, and PTSD, and that despite of ongoing treatment for these conditions, "continues to display reduced concentration and attention, reduced insight and judgment, anxiety, and occasional sleep disturbance." (R. at 16.) The ALJ noted that Plaintiff testified he stopped working at his maintenance worker position because he took "excessive sick leave . . . due to difficulty sleeping, fatigue, and anger, depression, or anxiety when not at home." (R. at 16.) The ALJ also noted Plaintiff's testimony that he "forgets to perform self-care, has difficulty in large groups, and has trust issues." (R. at 16.) And finally, the ALJ noted that Plaintiff attempted to end his life during the period at issue. (R. at 16.)

However, the ALJ also observed that Plaintiff's functioning "improved significantly since leaving the workforce and receiving more consistent treatment." (R. at 16.) In making this conclusion, the ALJ cited to certain medical records (R. at 16 (citing R. at 291–352, 406–657)), which showed that Plaintiff informed his treatment providers that the maintenance worker job was too stressful and physically demanding. (R. at 372, 375–76.) These medical records reflect that Plaintiff "dislike[d] his [maintenance worker] job," that there was "a lot of negativity at work and other employees are going through similar issues as him," and that he was seeking other job opportunities. (R. at 372, 375.) Moreover, medical records showed that for the last several months of Plaintiff's maintenance worker job, Plaintiff was not seeing one of his treatment providers, Thomas Joseph, Ph.D. ("Dr. Joseph"). (R. at 486.) Plaintiff started seeing Dr. Joseph again in January 2019 (R. at 486), a few months after he left his maintenance worker position in August

2018 (*see* R. at 30). As noted by the ALJ, medical records after January 2019 showed that Plaintiff was generally cooperative, pleasant, and of normal mood and thought processes. (R. at 16 (citing R. at 449, 471–72, 480, 486, 534, 540).) Finally, the ALJ observed that Plaintiff testified that he drives at least once a week, can perform simple tasks, interact with small groups, function independently, and was able to manage the household in his spouse's absence. (R. at 16.)

The ALJ's credibility decision also relied upon other medical evidence, including medical opinions. Specifically, the ALJ found persuasive the opinions of Dr. McClain and Dr. Milan, which concluded that Plaintiff could complete a "normal workday and workweek without interruptions." (R. at 17 (citing R. at 57–59, 73–74).) The ALJ observed that the opinions were consistent with the medical evidence which established that Plaintiff's "symptoms are generally managed with medications, but he continues to have some reduced attention, and concentration." (R. at 17.) These opinions therefore contradict Plaintiff's assertions concerning his potential absenteeism from future work.

Given the ALJ's explanation of Plaintiff's testimony, the medical records, and the medical opinion evidence, and in light of the deference given to credibility determinations, the ALJ sufficiently explained why Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. The ALJ adequately compared Plaintiff's statements to the administrative record, which showed some continued limiting effects from Plaintiff's depression, anxiety, and PTSD, but not to the degree asserted by Plaintiff. Importantly, while the employment records presented by Plaintiff demonstrate, without challenge, that Plaintiff was previously absent from work on average of three days per month, Defendant correctly notes that "Plaintiff's absenteeism arguments are based on his reported sick leave." (Def.'s Mem. at 13 n. 4.) Plaintiff points to no medical opinion or other medical record showing

that his impairments require him to be absent from work in the future. The ALJ is "not required to assume facts for which there is no evidence." *Faith D. v. Kijakazi*, No. 3:20-CV-334, 2021 WL 4316110, at *3 (E.D. Va. Sept. 22, 2021) (finding that merely stating that attendance at medical appointments would cause absenteeism at work, without more, would be "speculative" evidence). Further, even if the ALJ fully credited Plaintiff's assertion that his mental health limitations were the cause of his past absences, the ALJ was required to consider Plaintiff's ability or inability to work in the future. As explained above, the ALJ adequately supported his credibility decision, and substantial evidence supports the residual functional capacity determination. Plaintiff has not met his burden of demonstrating an absenteeism limitation. *See Thomas*, 916 F.3d at 310 (holding that the burden at the residual functional capacity stage is on the claimant).

Plaintiff nonetheless argues that the ALJ failed to specifically address or explain Plaintiff's absenteeism. Contrary to this argument, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). As other courts have found, "the ALJ was not required to assess the credibility of [a claimant's] statements on a symptom-by-symptom basis." *Moore v. Colvin*, No. 15-cv-8341, 2016 WL 6995561, at *6 (N.D. Ill. Nov. 30, 2016) (citing *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012)); *see Russell v. Chater*, 60 F.3d 824 (Table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (per curiam) (explaining that there is no "inflexible rule requiring exhaustive point-by-point discussion in all cases"). Thus, in the instant case, the ALJ was not required to explain why it did not find Plaintiff's statements regarding his absenteeism at his maintenance worker job, specifically, as not credible, so long as the ALJ satisfied the requirement in explaining Plaintiff's credibility determination, generally. The ALJ adequately explained the credibility determination

of Plaintiff, generally, but also sufficiently addressed the issue of Plaintiff's absenteeism. The ALJ, as described above, noted the Plaintiff's testimony that he needed to take sick leave, Plaintiff's belief that he is unable to currently work due to those same limitations, and the evidence relevant to the ALJ's conclusion that Plaintiff does not require a break or absenteeism limitation. (R. at 16–17.) The ALJ additionally asked the vocational expert about absences. (R. at 46.) For these reasons, the ALJ has satisfied the burden to form a logical bridge to the conclusion in the decision.

2.  The ALJ Did Not Err In Evaluating Plaintiff's Ability to Perform Certain Activities.

Plaintiff argues that substantial evidence does not support the ALJ's statements in the ALJ's residual functional capacity analysis. (Pl.'s Mem. at 12.) Specifically, Plaintiff identifies the ALJ's statements that Plaintiff performs simple tasks, interacts with small groups, drives once a week, functions independently, manages the household in his spouse's absence, improved after leaving the workforce and receiving more consistent treatment, and had normal mood and thought processes during treatment visits. (Pl.'s Mem. at 13–14 (quoting R. at 16).) Plaintiff contends that the ALJ erred by failing to acknowledge the extent to which Plaintiff could perform the activities within these statements and failed to recognize whether such activities demonstrated Plaintiff's ability to sustain full-time employment. (Pl.'s Mem. at 13–15.)

Defendant argues that the ALJ properly evaluated Plaintiff's ability to do certain activities as being inconsistent with some of Plaintiff's testimony. (Def.'s Mem. at 17.) Defendant asserts that the ALJ properly evaluated Plaintiff's ability to do the "extent" of these activities, such as Plaintiff's ability to do "simple" tasks, interact with "small" groups, and drive "once a week." (Def.'s Mem. at 17.) Defendant further argues that the ALJ was not prohibited from considering Plaintiff's ability to manage the household in his spouse's absence and travel to Indonesia. (Def.'s Mem. at 18.) Finally, Defendant argues that, on balance, the ALJ properly formulated Plaintiff's

residual functional capacity based on a fair assessment of the entire medical record. (Def.'s Mem. 19–20.)

In evaluating the intensity, persistence, and limiting effects of a claimant's asserted symptoms, ALJs may consider the claimant's daily activities. § 404.1529(c)(3)(i). In considering a claimant's daily activities, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [he] can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). In other words, the ALJ cannot identify a claimant's mere ability to perform an activity without acknowledging a claimant's qualifying statements concerning that activity. *Arakas*, 983 F.3d at 100 (citing *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006)).

Additionally, when assessing daily activities, an ALJ must explain how a claimant's ability to perform such activities demonstrates the claimant's ability to perform an eight-hour workday. *Arakas*, 983 F.3d at 100. The "critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as [he] would be by an employer." *Id.* at 101 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Here, the ALJ's statements challenged by Plaintiff lie in the same two paragraphs:

. . . [Plaintiff] also indicated that he is able to perform simple tasks and interact with small groups, drives once a week, and is able to function independently.

. . . .

. . . [Plaintiff's] functioning has improved significantly since leaving the workforce and receiving more consistent treatment. In fact, [Plaintiff] was able to manage his household during an extended absence of his spouse, travel to Indonesia independently, navigate a layover airport, and deal with the death of a family dog without any significant worsening of his symptoms. Additionally, the claimant is generally cooperative and pleasant during treatment visits, with normal mood and

21

thought processes and no indication of suicidal ideation.

(R. at 16 (internal citations omitted).)

The ALJ did not err in stating that Plaintiff exhibited normal moods and thought processes during treatment visits, or that Plaintiff could perform simple tasks, interact with small groups, drive once a week, function independently, and manage the household in his spouse's absence. The ALJ properly described the extent to which Plaintiff could perform these activities and accurately represented Plaintiff's testimony and the medical records regarding these activities. Plaintiff testified that he drives once a day (R. at 33–34) and can tolerate brief conversations with strangers (R. at 38–40). Plaintiff indicated on medical forms that he takes care of his spouse, son, and pet; he can microwave meals; he was able to independently attend appointments in his spouse's absence; and he was able to navigate multiple airports to travel to Indonesia independently, which Plaintiff characterized as a "nice trip." (R. at 198–99, 553, 561.) Plaintiff did not offer any testimony qualifying his ability to manage the household in his spouse's absence. Medical records further show that Plaintiff exhibited normal thought processes and mood during treatment visits. (R. at 246, 249, 259, 262, 277, 280, 449, 471–72, 480, 486, 534, 540).)

The ALJ also adequately explained how these activities translate to performance at work. The ALJ explained that Plaintiff had a moderate limitation in interacting with others, noting that Plaintiff has difficulty "spending time in crowds" but is able to live with others, navigate errands that involve interaction with the public, and present with normal and cooperative demeanor at medical appointments. (R. at 14.) The ALJ also relied on Plaintiff's ability to drive in order to conclude that Plaintiff has a mild limitation in understanding, remembering, or applying information. (R. at 14.) Further, it is a reasonable inference that managing the household and traveling to Indonesia would require some public interaction, performance of simple tasks

22

independently, and adaptability to changes for an extended period. The vocational expert also testified that a person who was able to perform simple work-related tasks and interact with the public occasionally could perform work in the national economy, such as laundry worker, marker, or document preparer. (R. at 45–46.) The ALJ relied on this testimony to conclude that Plaintiff could perform jobs in the national economy, and thus the ALJ properly explained how Plaintiff's ability to perform certain activities translated to the ability to perform work-related functions.

One statement requires additional discussion—the ALJ's statement that Plaintiff's "functioning has improved significantly since leaving the workforce and receiving more consistent treatment." (R. at 16.) Plaintiff asserts that this statement is problematic because "[o]nce removed from the stressors of work, [Plaintiff's] functioning might very well be expected to improve – but not in any way which would have been indicative of functioning well in a work environment." (Pl.'s Mem. at 14.)

The Court interprets the ALJ's statement as saying that Plaintiff's functioning has improved significantly in the time period "since" he left the workforce and received more consistent treatment—not that his functioning has improved *because* he left the workforce, as Plaintiff argues. Clearly, Plaintiff's improved condition after leaving the workforce would not necessarily show that Plaintiff would maintain the improved condition once he returned to the workforce. The ALJ, however, did not imply such a conclusion. Instead, reading the statement in its full context, the ALJ merely noted that Plaintiff's mental health improved generally over time, in light of recent and more consistent treatment. As a result, Plaintiff experienced more recent successes in managing the household in his spouse's absence and presenting with normal thought processes without suicidal ideation, as noted by the ALJ following the disputed statement.

The ALJ's statement is also supported by the evidence. As described above, Plaintiff was not seeing one of his treatment providers, Dr. Joseph, for the last few months of his maintenance worker position. (*See* R. at 30, 486.) Once Plaintiff began seeing Dr. Joseph again in January 2019, Plaintiff improved his mental health, as reflected by medical records showing normal mood and thought processes and no indication of suicidal ideations. (R. at 449 (denying "worsening mood" and stating "[m]edications are helpful" in May 2019), 471–72 (denying "worsening mood" in March 2019), 486 (reporting "improving mood" in late January 2019 after negative period earlier that month).) It was also during this later period that Plaintiff was able to manage the household in his spouse's absence and travel to Indonesia (R. at 553, 560–61), which demonstrates improved functioning. Given this evidence, it was reasonable for the ALJ to note this change in circumstances as relevant to Plaintiff's residual functional capacity.[7] Finally, the Court notes that the ALJ does not have an obligation to thoroughly explain every statement within in its decision, as noted above. The ALJ did not err in making certain statements regarding Plaintiff's abilities, and therefore the ALJ did not err in formulating Plaintiff's residual functional capacity.

## C. Remand for a Calculation of Benefits Is Not Warranted.

Plaintiff argues that the Court should remand the case for a calculation of benefits rather than a new hearing because of the ALJ's errors, as argued above. (Pl.'s Mem. at 15.) Remand for a calculation of benefits is unwarranted because, as analyzed above, the ALJ did not err in refusing

---

[7]    The Court notes that the ALJ's explanation of Plaintiff's improved functioning could have been more fully developed. Nevertheless, given the other evidence in the record, the Court finds that any such error would be harmless. *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016) (noting that a court must look to "the likelihood that the result would have been different" to determine if an ALJ's error is harmless (quoting *Shinseki v. Sanders*, 556 U.S. 396, 411 (2009))). The ALJ would likely still formulate the same residual functional capacity determination because the ALJ relied on Plaintiff's ability to perform certain activities, other medical records, and the medical opinion evidence to support the determination, as noted earlier in this opinion.

to consider the 100% disability decision by the VA, the ALJ did not err in considering Plaintiff's absenteeism at work, and the ALJ did not err in making certain statements regarding Plaintiff's abilities in formulating Plaintiff's residual functional capacity.

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 20), GRANTS Defendant's Motion for Summary Judgment (ECF No. 22), and AFFIRMS the final decision of the Commissioner.

An appropriate Order consistent with this Memorandum Opinion shall be issued.

_____
Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: March 30, 2022